### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TOP FLIGHT ENTERTAINMENT, LTD, A
Michigan Corporation doing business as
FLIGHT CLUB, and FLYING ACES, LLC,
A Limited Liability Company,

                                             Plaintiff,

v.                                                          Case No. 11-cv-15148
                                                          Honorable Denise Page Hood
BILL SCHUETTE, individually and in his official
capacity as ATTORNEY GENERAL OF THE
STATE OF MICHIGAN, M. SCOTT BOWEN,
individually and in his official capacity as
Commissioner of the MICHIGAN BUREAU OF
THE STATE LOTTERY, a State agency, JOHN
LESSNAU, Manager, Regulatory Investigations
Support Section of the MICHIGAN GAMING
CONTROL BOARD, and PAMELA BENZING,
Detective Lieutenant, Gaming Section,
MICHIGAN STATE POLICE,

                     Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE EXHIBITS

## I.      INTRODUCTION

This matter is brought pursuant to 42 U.S.C. § 1983. Now before the Court is Defendants'

Motion to Dismiss. Also before the Court is Plaintiff's Motion to Strike the Exhibits attached to

Defendants' motion to dismiss. Both matters have been fully briefed. Oral argument is set for May

1

9, 2012. For the reasons stated below, the Court **GRANTS IN PART** Defendants' motion to dismiss.

## II.    STATEMENT OF FACTS

Plaintiff Top Flight Entertainment brings the present suit against Bill Schuette, the State of Michigan Attorney General, M. Scott Bowen, Michigan Bureau of State Lottery Commissioner, John Lessnau, a Michigan Gaming Control Board Certified Fraud Examiner, and Pamela Benzing, a Michigan State Police Detective Lieutenant. Top Flight sues Schuette and Bowen in their official and individual capacities. It pursues Lessnau and Benzing in their official capacities. Top Flight alleges violation of Top Flight's First Amendment Freedom of Expression, First Amendment right to redress grievances, Fourteenth Amendment procedural due process rights, and Fourteenth Amendment substantive due process rights.

Top Flight Entertainment is a Michigan corporation that operates Flight Club, a topless adult entertainment facility, in Inkster, Michigan. Flying Aces is a Michigan limited liability company operating out of Flight Club under a lease agreement. The agreement contemplated that Flying Aces contract with charitable organizations to offer gaming events under a temporary license: Millionaire Parties. In order to host Millionaire Parties, Flying Aces first had to be approved as a lessor for the purpose of renting a location to organizations seeking to host a gaming event.

In October 2010, Ronald K. Wells, an inspector with the Charitable Gaming Division (CGD) and Mark Bently, a CGD supervisor, met with Alan Markovitz, Ronald Szolack, and Robert Goldman as representatives of Flying Aces. In March 2011, Flying Aces' leadership met with Bowen and the mayor of the City of Inkster to express intention to pursue approval as a lessor for Millionaire Parties. Alan Markovitz, the supervising manager of ABCDE Operating, LLC, a

2

sexually oriented business, who owns an interest in Flying Aces participated in the meeting as a representative. Plaintiff alleges that Schuette, Bowen, Lassnau, and Benzing knew that Markovitz owned several sexually oriented businesses. Flight Club and Flying Aces representatives alleged that they knew of no other business that offered adult entertainment that was approved as a lessor. They informed Bowen that the location that would be used for the Millionaire Parties offered adult entertainment. There was no objection.

To become a lessor, Flying Aces and Flight Club were required to waive their Fourth Amendment right against unreasonable search and seizure; obtain Bureau approval of any rental agreement with a charitable organization; conform its conduct to Traxker-McCauley-Law-Bowman Bingo Act, MICH. COMP. LAWS § 432.101; conform the form and content of its commercial speech to the Bureau's rules, regulations, and administrative rules; and be subject to regulation regarding licensed gaming events. Subsequent to Bureau investigation of the location, Flying Aces was approved as a lessor in early 2011 and placed on the list of locations where Millionaire Parties could be held.

In April 2011, Flying Aces and Flight Club contracted to advertise the availability of Millionaire Parties on billboards. Ronald Wells informed Flying Aces that there were complaints about advertising and that it must stop advertising. Plaintiff alleges that the complaints were anonymous but created by other businesses conducting Millionaire Parties. Plaintiff ceased its advertising activities.

In April 2011, ABCDE Operating filed suit against State of Michigan Governor Rick Synder in an unrelated constitutional challenge to Public Acts 342 and 343. In May 2011, Flying Aces filed suit against Governor Rick Synder challenging the constitutionality of Public Act 343. In July 2011

3

Flight Club filed suit against Governor Rick Synder challenging the constitutionality of Public Act 343. A settlement agreement was reached on those cases in August 2011.

Plaintiff alleges that between April 5 and August 2011, Schuette and Bowen initiated investigations of Flying Aces and Flight Club with the cooperation of Lessnau and Benzing. After May 18, 2011, Michigan State Police began investigating Flying Aces and Flight Club. On July 12, 2011, Lessnau and Benzing executed a search warrant against the Flight Club and Flying Aces Michigan Avenue location in Inkster, Michigan. The affidavit supporting the search warrant is sealed. After this investigation, Plaintiff alleges that Lessnau and Benzing have conducted a continuing criminal investigation.

In June 2011, Top Flight alleges that there were "substantial and unusual delays" in the issuance of licenses to organizations seeking to conduct a Millionaire Party at Flying Aces. Flying Aces and Flight Club were informed that these delays were the result of a backlog in licensing requests. In July 2011, Flight Club and Flying Aces learned that all licenses for events held at Flying Aces were denied prior to execution of July 2011 warrant. They also learned that licenses would continue to be denied for the "foreseeable future." Flying Aces was later informed that all applications would be denied in the future.

Flying Aces held a meeting with Bowen's agents and an assistant attorney general regarding the denied licenses. Flying Aces was told that no further licenses would be approved because administrative charges were brought against charitable organizations conducting Millionaire Parties at Flying Aces and the investigation into these charges was not complete.  Markovitz expressed his disapproval of the Bureau's decision and indicated that it would result in further litigation. The Bureau's representative stated that the threat of further litigation was "the attitude that got you here."

4

Flight Club alleges that it is in engaging in protected speech by offering topless adult entertainment and that it is now being retaliated against for exercising its First and Fourteenth Amendment rights and that it has a valid property interest in being considered an approved lessor for Millionaire Parties.

## III.    LAW & ANALYSIS

### A.    Standard of Review

In a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of proving that jurisdiction is proper. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). To survive a motion to dismiss for lack of subject matter jurisdiction, the plaintiff must show that a claim under federal law is alleged and that the claim is "substantial." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A claim is substantial unless "prior decisions inescapably render [it] frivolous." *Id.* (quoting *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984). If the Court finds that it lacks subject matter jurisdiction, it must dismiss the case. Fed.R.Civ.P. 12(h)(3).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Defendants have attached several exhibits to their motion to dismiss: the charities licensed to hold Millionaire Parties at Flying Aces; Notices of Intent to Commence Formal Proceedings & Agreements Acknowledging Violations; Charity Licensed to Hold Millionaire Parties at Diva's Poker Room; Other Locations Where Millionaire Parties Have Denied; Stipulated Order in Case No. 11-cv-11426; Affidavit for Search Warrant & Search Warrant; and Criminal Complaints. Plaintiff asks that the Court strike these exhibits because these items were not attached to the Complaint, are not public records, are not in the record of the case, or referred to in the Complaint or central to Plaintiff's claims. Defendants argue that their exhibits are of public record and referenced in the Complaint.

In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and central to the claims contained therein." *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court cannot consider items that would refute the factual allegations in Plaintiff's Complaint. *See Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 2012 WL 678166 (6th Cir. Mar. 2, 2012) (reversing trial court grant of motion to dismiss when trial court considered settlement agreement that directly conflicted with allegations made in the complaint).

Defendants contest the factual allegations in Plaintiff's Complaint, which is an inquiry that should be reserved for a motion for summary judgment. Specifically, the exhibits that Defendants

6

have attached directly conflict with the allegations made in Plaintiff's Complaint. Attachment A is a record of the licenses issued to charities to hold Millionaire Parties. Defendants argue that it was included to show that Plaintiff's argument that the licenses were denied in retaliation for Plaintiff's unrelated litigation against Governor Synder was false.  Defendants argue that Attachment B shows that the decision to stop issuing licenses was based on numerous violations at the Millionaire Parties and not due to unrelated litigation or Plaintiff's operation as a topless bar. Attachment C refutes Plaintiff's alleges that Flying Aces was the only lessor that was also as an adult topless bar. Attachment D, letters showing application denials for Millionaire Parties at other locations, is to show that "denying licenses based on the location is not something unique to Plaintiff's bar." Dkt. 17.  Attachment G is the criminal charges filed after the execution of the warrant, which Defendants included to refute Plaintiff's allegation that the decision to stop issuing licenses was influenced by Plaintiff's operation of adult entertainment. The Court declines to consider these exhibits.

There is some question regarding Exhibits E and F. Exhibit E is the stipulated order resolving the litigation in an unrelated matter. Although Defendants concede that it was admitted to show the implausibility of Plaintiff's allegations of the violation of first amendment rights, Plaintiff referenced the settlement in their Complaint. However, the outcome of or subject matter of the unrelated litigation is not at issue here. Attachment F is an affidavit and search warrant also referenced to in Plaintiff's Complaint. Plaintiff alleges that the search warrant was sealed and continues to be sealed. Defendants offer it to dispel Plaintiff's allegation that it was required to waive its fourth amendment rights against unreasonable search and seizure and that Plaintiff has no valid property interest. Consideration of the search warrant is proper because it only adds to the allegations made in Plaintiff's Complaint. Defendants' argument that the search warrant shows that Plaintiff did not

7

waive its fourth amendment rights and had no property interest are both legal conclusions that do not change the factual allegations made in the complaint.

The Court proceeds with analyzing Defendants' motion to dismiss without reference to Exhibits A, B, C, D, E, or G. The Court will consider Exhibit F. Accordingly, the Court grants in part and denies in part, Plaintiff's motion to strike.

### B.    Standing

The Court must first determine if there is standing before considering any substantive issues. *Planned Parenthood Assoc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). Article III of the Constitution limits the federal courts to "cases and controversies." Standing is present when three elements are established: (1) plaintiff suffered an "injury in fact, which is both concrete and particularized, and actual or imminent;" (2) causal connection between the injury and complained of activity such that it is fairly traceable to the defendant's actions; and (3) likely, not speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Accordingly, the plaintiff has the burden of proving with specificity injury in fact, causation, and redressability. *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999).

Defendants argue that Plaintiff is challenging regulation aimed at third parties. They assert that Plaintiff does not qualify for Millionaire Parties and does not meet any of the requirements for standing: injury-in-fact, causation or redressability. Plaintiff alleges that it has a property interest in maintaining its status as a Bureau approved lessor for the Millionaire Parties and that Defendants, in retaliation against Plaintiff's filing of unrelated lawsuits, have denied a license to any charitable organization that seeks to hold an event at Flying Aces and will deny any further licenses to third

8

parties that seek to conduct Millionaire Parties at Flying Aces. Plaintiff's claimed injury is that the Defendants' actions have caused it to lose revenue from Millionaire Parties by denying all licenses to eligible charities without reason in violation of Plaintiff's first amendment right to freedom of expression. Plaintiff further alleges that it has suffered economic losses resulting from its inability to conduct Millionaire Parties.  Plaintiff's alleged injury is the direct result of Defendants' denying licenses to allegedly qualified charitable organizations seeking to have Millionaire Parties at Flying Aces.  If Defendants were enjoined from denying applications to conduct Millionaire Parties at Flying Aces from otherwise qualified charities, this action would likely redress Plaintiff's injury. The Court finds that standing is present.

### C.  Motion to Dismiss

#### 1.  Count I: Freedom of Expression Violation

Defendants argue that Plaintiff's expressive conduct of operating a topless bar is unrelated to gambling and there is no right to offer gambling.  Defendants assert that the charitable organizations and not Plaintiff are licensed to conduct Millionaire Parties.  They contend that Plaintiff does not have an interest in the possible future issuance of discretionary millionaire party licenses to third parties.

A prima facie case for retaliation for engaging in protected speech requires the plaintiff to show: (1) that it engaged in constitutionally protected speech, (2) that the plaintiff was subject to an adverse action, and (3) plaintiff's engagement in protected speech was the motivating or substantial factor in the adverse action. *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006). First, Plaintiff does not allege that the act of gambling itself is a form of protected speech. Rather, the alleged protected speech is providing adult entertainment which is considered protected

9

speech. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, 289 (2000). Second, Plaintiff alleges that Defendants' act of denying the licenses to qualified charities seeking to hold Millionaire Parties at Flying Aces was an adverse action. The act of denying the license caused Plaintiff to suffer an economic injury in the form of lost revenues.

Plaintiff has failed to state a claim for a freedom of expression violation. The relevant inquiry is whether Plaintiff's protected speech was a motivating or substantial factor in the alleged adverse action. This inquiry is typically an inquiry for the trier of fact. *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010). As an initial matter, Plaintiff cannot claim a constitutionally protected interest in discretionary licenses to third parties. *JDC Mgmt., LLC v. Reich*, 644 F.Supp.2d 905, 944 (finding that the plaintiffs had "no constitutionally cognizable property interest in . . . third parties' would-be licenses [less still a property interest in any profit they *expected or hoped* to earn doing business with the licenses after their approval."). If the Court were to assume for the purpose of argument that the protected speech was operating a topless bar, Plaintiff's first amendment claim would still fail. Plaintiff concedes that Defendants were aware that the location for the Millionaire Parties was an adult entertainment facility. Not only did Defendants visit the location, but they expressed no objection to its use. Plaintiff was given its status as an approved lessor in full knowledge that it operated a topless bar. Further, Millionaire Parties were approved at Flying Aces with knowledge that it was a topless bar. Plaintiff fails to make any other allegations that would connect its operation of the topless bar to Defendants' denial of licenses to third parties. Count I is dismissed.

### 2.    Counts II & III: First Amendment Retaliation

Defendants next argue that Plaintiff cannot prove causation because Millionaire Parties were

approved after the filing of the lawsuits that formed the basis of the retaliatory conduct.[1] A prima

facie case of first amendment retaliation, as stated above, requires protected speech, adverse action,

and causation.  *Miller*, 448 F.3d at 894.  Plaintiff alleges that it engaged in protected activity by

filing suit in the unrelated litigation. Plaintiff then alleges that the denial of applications of qualified

applicants was an adverse action that caused Plaintiff economic injury. There is no dispute that the

filing of a lawsuit is considered a protected form of speech. As for causation, Plaintiff has alleged

sufficient facts to show that causation is plausible. Plaintiff began filing suits in April 2011. In June

2011, there were unusually long delays in license approval. In July 2011, Plaintiff was informed that

Flying Aces would not be granted any further licenses. Plaintiff has stated a claim for first

amendment retaliation in Counts II & III.

### 4.    Count IV: Procedural Due Process

In a section 1983 action, the plaintiff must show that the plaintiff was denied a

constitutionally protected interest without due process of law. *See Zinerman v. Burch,* 494 U.S. 113,

125-26. The plaintiff must have a legitimate claim to a property interest, which is created from an

independent source, such as state law.  *Board of Regents v. Roth,* 408 U.S. 564, 577. A benefit is not

a protected entitlement if the government may grant or deny it at its own discretion. *Town of Castle*

*Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Defendants argue that Plaintiff does not have a property interest as a would-be lessor.

Plaintiff itself does not have a license to conduct Millionaire Parties and the issuance of Millionaire

Parties to charities is discretionary. Plaintiff claims a property interest in its status as an approved

lessor for Millionaire Parties. It argues that this status was revoked without notice or an opportunity

---

[1] Defendants based their arguments on Exhibits A and B, which the Court will not consider in a motion to dismiss.

to dispute the revocation. Plaintiff argues that it is entitled to this status based on representations by Bureau agents that it would remain an approved lessor unless it violated the Bingo Act. Defendants cite *JDC Management*, for the proposition that Plaintiff does not have a constitutionally protected interest in a license that it does not hold. 644 F.Supp.2d at 944–45. In that case, the court held that the plaintiffs did not have a "constitutionally cognizable property interest in . . . third parties' would-be licenses." *Id.*

In this case, Plaintiff is not claiming a protected interest in hosting Millionaire Parties. Rather, Plaintiff claims a constitutionally protected interest in its status as an approved lessor. Plaintiff argues that this entitlement was derived from the Bureau's representations. Plaintiff has not provided any case law showing that such an interest would exist. Given that the charitable agencies cannot assert a protected interest in a license, it would necessarily follow that Plaintiff cannot claim a right to its status as an approved lessor. *See JDC*, 644 F.Supp.2d at 944–45. There is no approval procedure for locations. They are not required to have a license. Regardless of whether Plaintiff is an approved lessor or not, it is ultimately the charity holds the license. Plaintiff has not sufficiently pled that it had "a reasonable expectation of entitlement [derived] from 'existing rules or understandings that stem from an independent source . . . ." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). It fails to point to the source of state law or regulations from which it derived its expectation of entitlement. Nor has Plaintiff explained why the Board's alleged representations would entitle it to a property interest. Plaintiff does not have a constitutionally cognizable property interest in its status as an approved lessor. It cannot, therefore, show that it is entitled to notice and an opportunity to be heard when its approved lessor status is allegedly revoked. Accordingly, Count IV is dismissed.

### 5.    Count V: Substantive Due Process

The substantive due process clause protects the right to be free from "arbitrary and capricious" action by the Government. *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). "Interests protected by substantive due process, which the legislature may *not* infringe unless supported by sufficiently important state interests, include those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that 'shock the conscience,' and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Bell v. Ohio State University*, 351 F.3d 240, 250 (6th Cir. 2003). The rights protected by substantive due process are "much narrower than those protected by procedural due process." *Id.* at 249–50.

Plaintiff claims that its constitutionally protected interest is derived from the representations made by Bureau that it had the right to use its property in a matter consistent with the Act and would not be subject to a blanket denial of all applications to hold Millionaire Parties at its facility. Plaintiff provides absolutely no authority to support its contention. Rather, Plaintiff argues that Defendants' actions were arbitrary and capricious. Official action only violates the due process clause when it "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *Bowers*, 325 F.3d at 763. As Plaintiff's procedural due process claim fails so must its substantive due process claim. Plaintiff has not shown that it has a right to be an approved location or even a right to hold charitable gambling events. Instead Plaintiff makes several conclusory statements that it urges the Court to accept as law. Plaintiffs have not made any allegations or arguments or cited any cases to demonstrate that Defendants' actions even plausibly violated Plaintiff's right to substantive due process. Count V is dismissed.

13

### 6.      Sovereign Immunity

Defendants argue that the eleventh amendment bars an action seeking damages against a state. The State is immune from suit for damages under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989). An action against a state official in his official capacity is a suit against the state office and, therefore, a suit against the state itself. *Id.* at 71. However, such immunity has its exceptions:

> A State may elect to waive that immunity through legislation, or through its conduct in litigation. The immunity does not attach if the lawsuit is not against the State or an "arm of the State." The immunity "does not extend to counties and similar municipal corporations." Immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law.

*Ernst v. Rising*, 427 F.3d 351, 358 -359 (6th Cir. 2005) (internal citations omitted). The eleventh amendment allows the Court to order prospective injunctive relief when there is a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985). However, in order to obtain injunctive relief, the plaintiff must show absent the relief requested that there would likely be irreparable harm and there is no other adequate remedy at law. *United States v. Miami University*, 294 F.3d 797, 816 (6th Cir. 2002). Only Count II and III of Plaintiff's Amended Complaint remain. The Court will proceed accordingly.

Plaintiff seeks damages against Schuette and Bowen in their individual capacities.  The Complaint does not allege that Lessnau and Benzing are being sued in their individual capacities, but requests the award of damages against them.  To the extent that Lessnau and Benzing are sued only in their official capacity, sovereign immunity attaches and the Court denies the relief requested.

14

### 7.      Quasi-Judicial Immunity

Defendants argue that Bowen as Commissioner of the Michigan Bureau of the State Lottery is entitled to quasi-judicial immunity. The Plaintiff has not addressed this argument and appears to concede it in its Response. The Supreme Court has extended absolute judicial immunity to certain officers that perform functions that are associated with the judicial process. *Cleavinger v. Saxner*, 474 US 193, 200 (1985). The official bears the burden of showing that such immunity is appropriate. *Id.* at 201. The Court should consider the following factors:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.* at 202. Defendants argue "state licensing bodies charged with deciding whether to award discretionary licenses are entitled to quasi-judicial immunity." *Keystone Redevelopmental Partners v. Decker*, 631 F.3d 89, 96 (3d. Cir. 2011) (finding that quasi-judicial immunity attached to the Pennsylvania Gaming Control Board). As previously stated, Plaintiff has provided absolutely no argument that Bowen is not entitled to immunity for his acts.  The Court finds that Bowen is entitled to immunity.

### 8.      Qualified Immunity

The Defendants contend that they are entitled to qualified immunity because Plaintiff has not alleged any action that has prevented it from engaging in its freedom of expression to operate a topless adult entertainment facility and there is not an established right to a third-party license. 1Qualified immunity is generally a threshold defense which applicability is to be determined by the trial judge.  *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988).  The Supreme Court has set forth

a two-part test to determine whether qualified immunity should attach.  First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 121 (2001).  If there is no such violation, the inquiry ends here.  *Id*.

If a violation can be adequately stated, the court next asks whether the right was clearly established.[1]  *Id*.  Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted."  *Id*.  *Saucier* also provides that an official's reasonable mistake is still cloaked with immunity.  *Id*.; *See also, Pearson*, 129 S. Ct. at 823 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.")  Plaintiff must show that the officers violated a right so clearly established that any official in Defendants' positions would have understood that they were under an affirmative duty to refrain from such conduct.  *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). In other words, Plaintiff must demonstrate that Defendants' conduct was objectively unreasonable in light of Plaintiff's clearly established rights.  *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999).

Here, Plaintiff asserts that its first amendment right to redress its grievances was violated.

---

[1] The *Pearson* court held that the two-step sequence laid out in *Saucier* is no longer required, and the district courts are free to decide the second question prior to resolving the constitutional issue where appropriate.  *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). *Id*.

16

As stated previously, filing an action in court to redress grievances is protected speech.  A reasonable official should know that the act of retaliating against a business for filing an action in court is constitutionally inappropriate.  Plaintiff may proceed with Counts II and III.

### 9.   Personal Involvement

Defendants argue that Plaintiff has not alleged any personal involvement by the Defendants in the alleged constitutional harm. As the Commissioner of the Bureau of State Lottery, Bowen is an appropriate party. As Defendants concede, "the Lottery Commissioner has sole discretion over whether to issue a millionaire-party license." Dkts No. 9, 18; MICH. COMP. LAWS § 432.104 ("Each applicant for a license to conduct a bingo, millionaire party, raffle, charity game, or numeral game shall submit to the bureau a written application on a form prescribed by the commissioner."); MICH. COMP. LAWS § 432.104a ("if the commissioner determines that the applicant is a qualified organization . . . , the commissioner may issue 1 or more . . . [Millionaire Party] licenses . . . .").

As to Schuette the Attorney General, Plaintiff has not shown how Schuette has in any way "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Bellam v. Bradley*, 729 F.3d 416, 421 (6th Cir. 1984). As to officers Benzing and Lessnau, Plaintiff has alleged that they executed the search warrants but has not demonstrated that such action was in itself unconstitutional or how Benzing or Lessnau personally participated in the Bureau's decision to deny all applications for qualified charitable organizations or removed Plaintiff from the approved lessor list. Schuette, Benzing, and Lessnau are not appropriate parties.

Given that Plaintiff has failed to identify that Benzing, Schuette, and Lessnau were personally involved in the alleged constitutional violations and concedes that Bowen is entitled to

17

quasi-judicial immunity, Plaintiff's Complaint must be dismissed in its entirety.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss [Docket No. 9, filed February 8, 2012] is **GRANTED IN PART** and **DENIED IN PART**.  Counts I, IV, and V are dismissed for failure to state a claim.  Defendant Bowen, as Commissioner of the State Lottery, is entitled to quasi-judicial immunity and is dismissed from this action.  Schuette, Benzing, and Lessnau are dismissed from Counts II and III because there are no allegations of their personal involvement in the alleged constitutional violation.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Exhibits at Docket 9 [Docket No. 16, filed March 22, 2012] is **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

S/Denise Page Hood_____
Denise Page Hood
United States District Judge

Dated:  September 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry_____
Case Manager

18